UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
:
STRIKE 3 HOLDINGS, LLC, :
: Case No. 1:24-cv-07506-ENV-VMS
Plaintiff, :
: **FIRST AMENDED COMPLAINT**
: **FOR COPYRIGHT**
vs. : **INFRINGEMENT**
:
JOHN DOE infringer identified as using :
IP address 71.167.214.13, :
:
Defendant. :
------------------------------------------------------------X

      Plaintiff Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff"), a Delaware limited liability company with its principal place of business located at 2140 S. Dupont Highway, Camden, Delaware 19934, brings this First Amended Complaint against Defendant John Doe infringer identified as using IP address 71.167.214.13 a/k/a ▓▓▓▓▓▓▓▓ ("Defendant"), and alleges as follows:

## Introduction

    1.    This is a case about the ongoing and wholesale copyright infringement of Plaintiff's motion pictures by Defendant.

    2.    Plaintiff is the owner of award-winning, critically acclaimed adult motion pictures.

    3.    Plaintiff's motion pictures are distributed through the *Blacked*, *Blacked Raw, MILFY*, *Slayed*, *Tushy*, *Tushy Raw, Vixen*, and *Wifey* adult websites and DVDs. With millions of unique visitors to its websites each month, the brands are famous for redefining adult content, creating high-end, artistic, and performer-inspiring motion pictures produced with a Hollywood style budget and quality.

1

4. Defendant is, in a word, stealing these works on a grand scale. Using the BitTorrent protocol, Defendant is committing rampant and wholesale copyright infringement by downloading Strike 3's motion pictures as well as distributing them to others. Defendant did not infringe just one or two of Strike 3's motion pictures but has been recorded infringing 44 movies over an extended period of time.

5. Although Defendant attempted to hide this theft by infringing Plaintiff's content anonymously, this Court's order(s) permitted Plaintiff to serve a subpoena on an Internet Service Provider ("ISP"), Verizon Online LLC a/k/a Verizon Fios ("Verizon"), to discover the identity of the subscriber assigned IP address 71.167.214.13, the IP address Defendant used to download and distribute Plaintiff's works.

6. Based on Plaintiff's investigation of the subscriber and publicly available resources, Plaintiff identified Defendant as the true infringer.

7. This is a civil action seeking damages under the United States Copyright Act of 1976, *as amended*, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

## Jurisdiction and Venue

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (jurisdiction over copyright actions).

9. This Court has personal jurisdiction over Defendant because Defendant used an Internet Protocol address ("IP address") traced to a physical address located within this District to commit copyright infringement. Therefore: (i) Defendant committed the tortious conduct alleged in this First Amended Complaint in the State of New York; (ii) Defendant resides in the State of New York and/or; (iii) Defendant has engaged in substantial – and not isolated – business activity in the State of New York.

10. Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in this District because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) the Defendant resides (and therefore can be found) in this District and resides in the State of New York. Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant resides or may be found in this District.

**Parties**

11. Plaintiff Strike 3 Holdings, LLC, is a Delaware limited liability company located at 2140 S. Dupont Hwy, Camden, DE 19934.

12. Defendant ▆▆▆▆▆ is an individual currently residing at ▆▆▆▆▆ ▆▆▆▆▆.

**Factual Background**

*Plaintiff's Award-Winning Copyrights*

13. Strike 3's subscription-based websites proudly boast a paid subscriber base that is one of the highest of any adult-content sites in the world. Strike 3 also licenses its motion pictures to popular broadcasters and Strike 3's motion pictures are some of the highest selling adult DVDs in the United States.

14. Strike 3's motion pictures and websites have won numerous awards, such as "best cinematography," "best new studio," and "adult site of the year."

15. Strike 3's motion pictures have had positive global impact, leading more adult studios to invest in better content, higher pay for performers, and to treat each performer with respect and like an artist.

16. Unfortunately, Strike 3, like a large number of other makers of motion picture and television works, has a major problem with Internet piracy. Often appearing among the most

infringed popular entertainment content on torrent websites, Strike 3's motion pictures are among the most pirated content in the world.

***Defendant Used the BitTorrent File Distribution Network
to Infringe Plaintiff's Copyrights***

17. BitTorrent is a system designed to quickly distribute large files over the Internet. Instead of downloading a file, such as a movie, from a single source, BitTorrent users are able to connect to the computers of other BitTorrent users in order to simultaneously download and upload pieces of the file from and to other users.

18. BitTorrent's popularity stems from the ability of users to directly interact with each other to distribute a large file without creating a heavy load on any individual source computer and/or network. It enables Plaintiff's motion pictures, which are often filmed in state of the art 4kHD, to be transferred quickly and efficiently.

19. To share a movie within the BitTorrent network, a user first uses BitTorrent software to create a .torrent file from the original digital media file. This process breaks the original digital media file down into numerous pieces.

20. The entire movie file being shared has a hash value (*i.e.*, the "File Hash"). A hash value is an alpha-numeric value of a fixed length that uniquely identifies data.

21. Hash values are not arbitrarily assigned to data merely for identification purposes, but rather are the product of a cryptographic algorithm applied to the data itself. As such, while two identical sets of data will produce the same cryptographic hash value, any change to the underlying data – no matter how small – will change the cryptographic hash value that correlates to it.

22. To find and re-assemble the pieces of the digital media file, *i.e.*, to download the file using BitTorrent, a user must obtain the .torrent file for the specific file that has been broken

down into pieces.

23. Each .torrent file contains important metadata with respect to the pieces of the file. When this data is put into the cryptographic algorithm, it results in a hash value called the "Info Hash."

24. The "Info Hash" is the data that the BitTorrent protocol uses to identify and locate the other pieces of the desired file (in this case, the desired file is the respective file for the infringing motion pictures that are the subject of this action) across the BitTorrent network.

25. Using the Info Hash in the metadata of a .torrent file, a user may collect all the pieces of the digital media file that correlates with the specific .torrent file.

26. Once a user downloads all of the pieces of that digital media file from other BitTorrent users, the digital media file is automatically reassembled into its original form, ready for playing.

27. Plaintiff has developed, owns, and operates infringement detection systems named "VXN Scan" and the "Cross Reference Tool". Each infringement detection system identifies infringement in two distinct ways.

28. The Cross Reference Tool first searched for and obtained .torrent files claiming to be infringing copies of Plaintiff's works, and then VXN Scan downloaded complete copies of the digital media files that correlate to those .torrent files.

29. Plaintiff then compared the completed digital media files to Plaintiff's copyrighted works to determine whether they are infringing copies of one of Plaintiff's copyrighted works.

30. The digital media files have been verified to contain a digital copy of a motion picture that is identical (or, alternatively, strikingly similar or substantially similar) to Plaintiff's corresponding original copyrighted Works.

31. VXN Scan used the "Info Hash" value, contained within the metadata of the .torrent file which correlated with a digital media file that was determined to be identical (or substantially similar) to a copyrighted work, to connect with Defendant, exchange information, and download a piece (or pieces) of multiple digital media files from Defendant using the BitTorrent network.

32. VXN Scan only downloads pieces of digital media files from Plaintiff's copyrighted works. At no point did VXN Scan upload content to any BitTorrent user. Indeed, it is incapable of doing so.

33. While Defendant was using the BitTorrent file distribution network, VXN Scan established multiple direct TCP/IP connections with Defendant's IP address.

34. VXN Scan detected, captured and documented the TCP/IP connections with Defendant including, but not limited to, Defendant transmitting pieces of Plaintiff's copyrighted motion pictures to Plaintiff and recorded those connections in a Packet Capture ("PCAP") file.

35. Plaintiff identified these pieces as portions of infringing copies of Strike 3's motion pictures.

36. Plaintiff also recorded infringement using its Cross Reference Tool.

37. The Cross Reference Tool is designed on the basis of a distributed hash table ("DHT") and is a class of decentralized distributed systems that provides an identification service similar to a hash table: (key, value) pairs are stored in a DHT, and any participating node can efficiently retrieve the value associated with a given key.

38. BitTorrent clients use a DHT to locate peers who are participating in the distribution of the digital media files related to the Info Hash. Specifically, a BitTorrent client locates and connects to the DHT network. That way it registers its own IP address while requesting IP addresses of other peers, which are distributing the same .torrent file.

39. Using this process BitTorrent users are able to locate and connect to a number of peers within a particular swarm, and download the data related to each .torrent file.

40. A BitTorrent client registers the IP address of the user into the DHT with the purpose of participating in the distribution of constituent pieces of the relevant digital media file.

41. The Cross Reference Tool uses servers that locate .torrent files and their related Info Hashes. The servers subsequently download the torrent information from popular torrent websites. The Cross Reference Tool is incapable of downloading any digital media file associated with an Info Hash, and it has only the ability to download torrent file metadata.

42. Similar to BitTorrent clients, the Cross Reference Tool uses a DHT to obtain the IP Addresses of peers registered to each .torrent file listed in the DHT.

43. The Cross Reference Tool detected and documented that Defendant used the BitTorrent File Distribution Network with the purpose of distributing digital media files that have been determined to be identical (or substantially similar) to Plaintiff's copyrighted motion pictures. At no point did the Cross Reference Tool upload content to any BitTorrent user. Indeed, it is incapable of doing so.

44. Both VXN Scan and the Cross Reference Tool independently recorded multiple infringements in the manner described above. Collectively, Plaintiff's proprietary software detected 44 number of infringements.

45. Each work infringed by Defendant is listed on Exhibit A and sets forth the Universal Time Coordinated (UTC) time and date of each infringement, along with the Info Hash value obtained from the metadata of the corresponding .torrent file.

46. Exhibit A also sets forth relevant copyright information for each work at issue: the date of publication, the date of registration, and the work's copyright registration number. In a

showing of good faith, Plaintiff has intentionally omitted the title of the work from this public filing due to the adult nature of its content, but can provide a version of Exhibit A containing the works' titles to the Court or any party upon request.

47. Thus, Defendant downloaded, copied, and distributed Plaintiff's Works without authorization.

48. Defendant's infringement was continuous and ongoing.

49. Plaintiff owns the copyrights to the Works and the Works have been registered with the United States Copyright Office.

50. Plaintiff seeks statutory damages, attorneys' fees, and costs under 17 U.S.C. § 501 of the United States Copyright Act.

### *Defendant is the Individual Who Infringed Plaintiff's Copyrighted Works*

51. Plaintiff's investigation has determined that Defendant is the person who used IP address 71.167.214.13 to infringe on its copyrighted works.

52. Plaintiff utilized the Maxmind geolocation service to determine the ISP that assigned IP address 71.167.214.13 (to determine the correct ISP to whom a subpoena can be sent) and the geographic location of the subscriber of that IP address (to determine the proper venue in which to file an action).

53. Maxmind reported that IP address 71.167.214.13 was assigned by Verizon to a subscriber approximately located in Queens, New York.

54. After the Court granted Plaintiff's request to conduct limited expedited discovery, Plaintiff served the court-authorized subpoena on Verizon on April 4, 2025.

55. On April 8, 2025, the ISP sent notice of the subpoena to the subscriber, in compliance with the Cable Communications Policy Act of 1984 ("CCPA"), 47 U.S.C. § 551 *et*

*seq.*, and this Court's April 1, 2025 Order [D.E. 7].

56. Plaintiff last recorded BitTorrent activity emanating from IP address 71.167.214.13 on April 6, 2025.

57. On or about June 11, 2025, Verizon responded to the subpoena and identified Defendant's father as the subscriber to whom the ISP had assigned the IP address to during at least one date of infringement and provided the address identified in paragraph 12.

58. After receiving the ISP's response to the subpoena, Plaintiff reviewed publicly available social media data for the subscriber and searched for other individuals who, upon information and belief, may reside in the residence (and therefore would have had sufficient access to the IP address during the period of infringement).

59. Upon information and belief, Defendant lived at the residence identified in paragraph 12 above during the period of infringement.

60. Upon information and belief, the only occupants of the residence identified in paragraph 12 above during the period of infringement were Defendant and his father (the subscriber) and mother.

61. During the period of infringement recorded by VXN Scan, a single BitTorrent client, called Deluge, was observed being used to download and distribute files through IP address 71.167.214.13.

62. The use of a single BitTorrent client indicates that only one (1) individual is using IP address 71.167.214.13 to download and distribute works using the BitTorrent protocol.

63. Plaintiff also logged BitTorrent network activity emanating from IP address 71.167.214.13 involving works other than Plaintiff's 44 copyrighted works during the period of infringement. Collectively, this evidence is referred to as the "Additional Evidence."

64. Plaintiff's Additional Evidence indicates that IP address 71.167.214.13 was used to download and distribute over thousands of files relating to other adult movies and mainstream media (*i.e.*, movies, music, books, software, TV shows, and other works) using the BitTorrent protocol during the period of infringement.

65. This consistent and prolonged history of BitTorrent activity indicates that the infringer is unlikely to be a houseguest or infrequent visitor.

66. Publicly available records indicate strong matches between the BitTorrent activity identified in Plaintiff's Additional Evidence and Defendant.

67. Defendant's publicly available social media indicates that Defendant has a degree in computer science.

68. Defendant's publicly available social media indicates that Defendant is employed as a Customer Service Representative for an Internet Service Provider.

69. Defendant's publicly available social media indicates that Defendant is a freelance graphic designer.

70. Defendant's publicly available social media indicates that Defendant possesses skills in Adobe™ Photoshop, Adobe™ Illustrator, photography, digital illustration, graphics, and cover art.

71. Plaintiff's Additional Evidence lists files related to Defendant's career and skills, including, but not limited to:

    a. *[MAC] Adobe CC (6.1.10)Ilustrator + Indesign + Photoshop+ Patch*;

    b. *ACDSee Photo Studio Ultimate 2024 v17.0.0.3568 (x64) + Crack-Keygen*;

    c. *Adobe Photoshop 2024 v25.2 Beta Pre-Activated*;

    d. *Adobe Photoshop CC 2018 v19.1.2.45975+Crack*;

  e. *Adobe Photoshop CC 2018 v29.0.1.29687 + Crack*;

  f. *Adobe Photoshop CC 2023 v23.5.6.749 (x64) Multilingual + Crack*;

  g. *Adobe Photoshop Lightroom 7.6 Final (32-64 bit)*;

  h. *Adobe Photoshop Lightroom CC 6.7 Incl Crack*;

  i. *Adobe Photoshop Lightroom Classic CC 2018 7.3 (x64) + Crack*;

  j. *Adobe Photoshop Lightroom Classic CC 2018 v7.0 For MacOSX*;

  k. *Adobe Premiere Pro 2023 25.8.5 x64 Pre-Cracked*;

  l. *Adobe Premiere Pro 2024 v24.0.3.2 (x64) + Fix*;

  m. *Adobe Premiere Pro CC 2015 v9.0 + Crack*;

  n. *AdobeCollectionCC2017MacOSXByKhaledMeGa.Com*;

  o. *Photodex ProShow Producer 9.1.3772+ Activator*;

  p. *PhotoScan Professional 1.5.3 (x86-x64) + Crack*;

  q. *Adobe Illustrator 2024 V28.0 + Crack*;

  r. *Adobe Illustrator CS6 v16.0.0.682 Multilingual.rar*; and

  s. *CorelDRAW.Graphics.Suite.2024.v25.0.0.230-ML.exe.*

72. Upon information and belief, Defendant downloaded and distributed the files identified in the foregoing paragraph using the BitTorrent protocol.

73. Defendant's technical background indicates that it is likely that he has not removed any factory-set password protection from the router he used to engage in this infringement.

74. Defendant's technical background indicates that it is likely that he instituted password protections on the router he used to engage in this infringement if they were not present by default.

75. Upon information and belief, the router Defendant used to engage in this

infringement was password-protected throughout the period of infringement.

## COUNT I

## Direct Copyright Infringement

76. The allegations contained in paragraphs 1–75 are hereby re-alleged as if fully set forth herein.

77. Plaintiff is the owner of the Works, which are each an original work of authorship.

78. Defendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol.

79. At no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise.

80. As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A) Reproduce its Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B) Distribute copies of the Works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C) Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Works' images in any sequence and/or by making the sounds accompanying the Works' audible and transmitting said performance of the work, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publicly" perform); and

(D) Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the works non-sequentially and transmitting said display of the works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display).

81. Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

**WHEREFORE**, Plaintiff respectfully requests that the Court:

(A) Permanently enjoin Defendant from continuing to infringe Plaintiff's copyrighted Works;

(B) Order that Defendant delete and permanently remove the digital media files relating to Plaintiff's Works from each of the computers under Defendant's possession, custody or control;

(C) Order that Defendant delete and permanently remove the infringing copies of the Works Defendant has on computers under Defendant's possession, custody or control;

(D) Award Plaintiff statutory damages per infringed work pursuant to 17 U.S.C. § 504(a) and (c);

(E) Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

(F) Award Plaintiff prejudgment and post-judgment interest at the applicable rate; and

(G) Grant such other and further relief as this Court may deem appropriate under law and equity.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: January 13, 2026
Respectfully submitted,

By: */s/ John C. Atkin*
John C. Atkin, Esq.
The Atkin Firm, LLC
JAtkin@atkinfirm.com
400 Rella Blvd., Suite 165
Suffern, NY 10901
Tel.: (973) 314-8010 / Fax: (833) 693-1201
*Attorneys for Plaintiff*